UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Harley L. Breer, Jr.,          :
        Plaintiff,             :
                              :
        v.                    :     File No. 2:03-CV-326
                              :
Steve Gold, Correctional      :
Medical Services, Pamela      :
Pederson, Kathy Lanman,       :
        Defendants.           :

OPINION AND ORDER
(Papers 71 and 98)

Plaintiff Harley Breer, a Vermont inmate proceeding *pro se*, brings this action claiming that the defendants failed to provide him with adequate medical and mental health care. Currently pending before the Court is the defendants' motion for summary judgment.

The defendants argue that Breer's claims amount to nothing more than a disagreement about the proper course of his medical treatment, and that his care met the prevailing community standards.  Breer counters that the defendants, and Dr. Pamela Pederson in particular, consistently delayed and/or impeded treatments that were recommended by other physicians.  He also claims that, while waiting for the necessary care, he suffered prolonged periods of pain and depression.

While the motion for summary judgment focuses solely on

Breer's medical care, the Amended Complaint includes other claims as well.  Accordingly, and for the reasons set forth below, the defendants' motion for summary judgment is GRANTED insofar as it seeks judgment on Breer's Eighth Amendment claims, and is otherwise DENIED.

### Factual and Procedural Background

Breer has been a Vermont inmate since 1999.  On July 15, 2002, he had back surgery consisting of an L4/5 bilateral decompressive laminectomy and a partial L3 decompression with microdiscectomies.  (Paper 71-2 at 1). The parties dispute whether he continued to have pain after the 2002 surgery, with Breer contending that he attained full health before re-injuring himself "performing Dead Lifts, and/or hitting softballs."  (Paper 99 at 2).  Breer subsequently sought medical treatment for "severe pain, numbness, and loss of function" while in prison in St. Albans, Vermont.  He was seen by a prison physician, Dr. Todd Werner, who ordered an outside consult.  Id.

In July 2003, prior to receiving the consult, Breer was transferred to the Northern State Correctional Facility ("NSCF") in Newport, Vermont.  Although he was initially able to confirm that the consult was still scheduled, the

2

appointment was later cancelled.  Breer did receive medical
attention at NSCF from Dr. Pamela Pederson, a physician
working under contract with Correctional Medical Services
("CMS"), the health care provider for the Department of
Corrections ("DOC").  Dr. Pederson followed what she
describes in her affidavit as a "conservative course of
treatment."  (Paper 71-2 at 2).  While being seen by Dr.
Pederson, however, Breer allegedly noticed in his medical
file that a supervising physician at CMS had characterized
him as a candidate for surgery and aggressive pain
management.  Breer claims that Dr. Pederson never advised
him of these options, and accuses her of trying to "minimize
cost and treatment."  Id. at 3.

Still unable to obtain an outside consult, Breer
allegedly filed sick call requests and grievances, and had
family members in regular contact with DOC personnel.  In
late November 2003, he filed this lawsuit seeking injunctive
relief and damages.  He also underwent an MRI which showed
significant degenerative disc disease from L3/4 through
L5/S1 with a large disc bulge on the right side at L3/4, a
recurrent central large disc at L4/5, and a disc bulge at

L5/S1.[1]  Breer credits the fact that the MRI took place to the Court's involvement in the case.

In January 2004, Dr. Pederson referred Breer to an anesthesiologist to receive epidural injections for pain relief.  In his opposition to the summary judgment motion, Breer explains that the injection "was not only unsuccessful but actually increased the pressure and pain symptoms in Plaintiff's lower extremities." (Paper 99 at 4).  He also claims that during his second appointment with the anesthesiologist, he learned that Dr. Pederson had provided information about his condition that was inaccurate.  When the anesthesiologist asked for a second MRI, Dr. Pederson allegedly phoned him and reiterated the inaccurate information "so as to change [the anesthesiologist's] treatment [recommendation] for an MRI." (Paper 99 at 4).

On August 4, 2004, pursuant to a referral from Dr. Pederson, Breer was seen by Dr. Warren T. Rinehard at Fletcher Allen Health Care's Spine Institute.  After conducting a physical examination and reviewing Breer's MRI,

---

[1]  When the MRI took place is not clear from the summary judgment record. The defendants' memorandum, citing Dr. Pederson's affidavit, states that the MRI took place in November 2003. However, the affidavit itself does not specify a date.  (Paper 71-2 at 2).  Medical notes submitted by the plaintiff suggest that the MRI was performed in April 2004.  (Paper 99-2 at 2).

Dr. Rinehard found that Breer was suffering from foot drop
on the left side and significant pain "in his lower right
extremity that he rates as a 10 out of 10." (Paper 71-2 at
4). Breer's condition was also causing urinary difficulties
and limiting his sleep to three hours a night. Dr. Rinehard
discussed the case with his colleague, Dr. Elizabeth Ames,
who agreed that Breer was a surgery candidate. Both doctors
stated in their notes that, in their opinions, continued
epidurals were not necessary and, according to Dr. Ames,
would not "be helpful." Id. at 6. Dr. Ames also warned
that Breer's "major risk of surgery is recurrence, which I
think is highly likely . . . ." Id.

When Breer returned from the Spine Institute, Dr.
Pederson spoke with Dr. Rinehard and provided what she
describes as "additional information including reports that
Mr. Breer had been physically active, playing basketball."
Id. at 2. In her affidavit, Dr. Pederson explains her view
of Breer's condition.

> My professional opinion at the time was that Mr.
> Breer should continue with a conservative course
> of treatment with pain medication, muscle
> relaxants and exercises. My opinion was based on
> a number of considerations including reports of
> Mr. Breer having engaged in vigorous athletic
> activity, running and playing basketball . . . .
> Mr. Breer was also reported to be sleeping without

5

significant interruption, and his difficulty with
urination had subsided.

These observations about Mr. Breer are important
because they indicated that his subjective report
of pain was not consistent with his level of
activity, and that he was a non-compliant patient.
Given the high risk of recurrence after surgery,
it was important that a suitable surgical
candidate demonstrate the willingness to be
compliant with physician's orders and restrictions
on activity.  I also considered the fact that my
range of motion testing showed that he was near
normal limits with no significant variance since
1999.

Id.

    After speaking with Dr. Pederson, Dr. Rinehart added

the following addendum to his progress notes:

I spoke with Dr. Pederson and discussed the
planned treatment for Mr. Breer.  She tells me
that he has been observed playing basketball and
really sabotaging his treatment given his
complaints.  I recognize this type of patient is
extremely difficult to treat and my recommendation
for adequate pain medication has to be based on
Dr. Pederson's judgment.  She is in the position
to monitor his function and she knows him better
as a person than I do.  I would completely rely on
her judgment for treatment of [Breer's] pain.

Id. at 5.

    In his opposition memorandum, Breer contends that his

activity level should not have been considered a sign of

either dishonesty or "non-compliance."  He explains that he

tried long periods of inactivity and found that it only made

6

his pain worse.  He therefore tried to maintain a "medium course of activity." (Paper 99 at 5).  He also reiterates the fact that throughout this time he suffered from "seemingly never ending pain" and was unable to sleep.  When he was able to sleep, it was only because the pain medication provided "temporary partial relief."  Id. at 6.

In October 2004, Breer was transferred to a prison facility in St. Cloud, Minnesota.  He underwent surgery in 2005.  With the surgery now having been performed, the remainder of the case focuses on Breer's alleged suffering between 2002 and 2005, and any permanent injuries resulting from the alleged delay in treatment.

In addition to inadequate medical care, the Amended Complaint charges the defendants with failing to address Breer's mental health needs.  (Paper 26).  Breer reportedly has a history of "serious mental illness including chronic post traumatic stress disorder, major depressive disorder and borderline personality disorder."  Id. at 3.  His inability to access adequate care for his pain allegedly resulted in "feelings of helplessness," and at one point he "attempted to injure himself by swallowing razor blades . . . ."  Id. at 4.  After this incident, he was placed on

"strip cell" status for nine days with no mattress or blanket, no clothing other than a smock, and no personal care items or writing materials.  <u>Id.</u> at 5.  Breer alleges that he requested adequate mental health care, but that his requests were denied.  <u>Id.</u> at 3.

The Amended Complaint is comprised of seven causes of action.  Counts I alleges Eighth Amendment violations by DOC Commissioner Steve Gold, prison Superintendent Kathleen Lanman and Correctional Medical Services.  Count II is a more general Eighth Amendment claim brought against all defendants.  Counts III and IV pertain to Breer's mental health care.  Count V asserts that placing Breer on "strip cell" status constituted cruel and unusual punishment, and was done in retaliation for his attempts to obtain adequate medical care.  Count VI accuses Dr. Pederson of violating Breer's Eighth Amendment rights, and Counts VII and VIII allege violations of state law standards of acceptable medical practice.[2]

The defendants' motion for summary judgment, while asking for the entire case to be dismissed, focuses only on

---

[2]  The Amended Complaint was drafted by Breer's court-appointed attorney.  Plaintiff's counsel has since withdrawn from the case, citing "irreconcilable differences" and the fact that Breer has now received the "necessary medical treatment."  (Paper 79).

the medical care provided by Dr. Pederson.  Dr. Pederson's
treatment pertains directly to the last three counts, with
potential implications for the medical care-related claims
in Counts I and II.  It is not clear from the record whether
Dr. Pederson had any responsibility for Breer's mental
health issues.

Discussion

I.  Summary Judgment Standard

    Under Rule 56(c) of the Federal Rules of Civil
Procedure, a motion for summary judgment may not be granted
unless the Court determines that there is no genuine issue
of material fact to be tried, and that the undisputed
material facts warrant judgment for the moving party as a
matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317,
322-23 (1986); Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d
Cir. 2006); Williams v. Utica Coll. of Syracuse Univ., 453
F.3d 112, 116 (2d Cir. 2006).  The burden of demonstrating
the absence of any genuine dispute as to material facts
rests upon the party seeking summary judgment.  See Adickes
v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Once a
properly supported motion for summary judgment has been
made, the burden shifts to the non-moving party to make a

sufficient showing to establish the essential elements of
that party's case on which it bears the burden of proof at
trial.  Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d
Cir. 2003).

The non-moving party must put forth "specific facts
showing there is a genuine issue for trial."  Fed. R. Civ.
P. 56(e).  In assessing the record to determine whether
there is a genuine issue to be tried as to any material
fact, courts are required to resolve all ambiguities and
draw all permissible factual inferences in favor of the
party against whom summary judgment is sought.  See Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Patterson
v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).
Nevertheless, a party opposing a motion for summary judgment
cannot rely on mere speculation or conjecture.  See, e.g.,
Conroy v. N.Y. State Dep't of Corr. Servs., 333 F.3d 88, 94
(2d Cir. 2003) ("[M]ere conclusory allegations, speculation
or conjecture will not avail a party resisting summary
judgment.").  If a plaintiff is proceeding pro se, courts
are to construe his pleadings liberally.  See, e.g.,
Williams v. Edwards, 195 F.3d 95, 96 (2d Cir. 1999).

II.  Eighth Amendment Claim

Breer claims that the defendants were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth and Fourteenth Amendments.  The defendants do not contest the seriousness of Breer's condition.  Instead, they argue that Dr. Pederson's care did not amount to a constitutional violation.

The Eighth Amendment, which is made applicable to the states through the Fourteenth Amendment, prohibits "unnecessary and wanton infliction of pain" and suffering. Estelle v. Gamble, 429 U.S. 97, 101-03 (1976) (citations and internal quotations omitted).  To succeed on a claim alleging that prison conditions, including medical care, violated the Eighth Amendment, a plaintiff must satisfy both an objective and a subjective requirement: the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citations and internal quotations omitted).

Accordingly, in order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective

11

terms, "sufficiently serious." <u>Hathaway v. Coughlin</u>, 37
F.3d 63, 66 (2d Cir. 1994), <u>cert. denied sub nom.</u>, <u>Foote v.
Hathaway</u>, 513 U.S. 1154 (1995).  A medical need is serious
for constitutional purposes if it presents "'a condition of
urgency' that may result in 'degeneration' or 'extreme
pain.'" <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir.
1998) (citations omitted).  As noted above, the defendants
do not appear to contest the seriousness of Breer's
condition.

　　　Turning to the subjective element, it is
well-established that deliberate indifference exists if an
official knows of and disregards an excessive risk to inmate
health or safety.  <u>Farmer</u>, 511 U.S. at 837.  The official
must "both be aware of facts from which the inference could
be drawn that a substantial risk of serious harm exists, and
he must also draw the inference." <u>Id.</u>  With respect to
medical care, prison medical staff is vested with broad
discretion to determine what method of diagnosis and/or
treatment to provide its patients.  <u>Estelle</u>, 429 U.S. at
107; <u>Chance</u>, 143 F.3d at 703; <u>Rosales v. Coughlin</u>, 10 F.
Supp. 2d 261, 264 (W.D.N.Y. 1998).  "[S]ection 1983 was not
designed to permit the federal courts to sit as final

arbiters of the sufficiency of medical practices of state prisons." White v. Haider-Shah, 2008 WL 2788896, at *7 (N.D.N.Y. July 17, 2008) (citing Church v. Hegstrom, 416 F.2d 449, 450-51 (2d Cir. 1969)). Indeed, some courts have allowed medical providers a "presumption of correctness" with respect to the care and safety of patients. Perez v. The County of Westchester, 83 F. Supp. 2d 435, 440 (S.D.N.Y. 2000) (citing Kulak v. City of New York, 88 F.3d 63, 77 (2d Cir. 1996)).

In this case, even when viewing the facts in a light most favorable to Breer, there is insufficient evidence of a constitutional violation. While a Vermont inmate, Breer underwent surgery on his back in 2002. He has not raised any complaints about his medical treatment prior to that time. When he re-injured himself, he was originally scheduled for an outside consult but, upon his transfer to a different facility, his care was guided by Dr. Pederson. In Dr. Pederson's professional judgment, Breer was best served by conservative, non-surgical treatment. After treatments in 2003 did not alleviate Breer's pain, Dr. Pederson referred him first to an anesthesiologist for nerve blocks, and then to specialists at the Spine Institute.

13

When Dr. Rinehart at the Spine Institute recommended surgery, Dr. Pederson contacted him and informed him of Breer's level of activity.  This activity reportedly included vigorous exercise such as participation in prison basketball games.[3]  After Dr. Pederson shared this information, Dr. Rinehart immediately deferred to her judgment as to the appropriate treatment for Breer's pain.

Dr. Pederson's affidavit explains that her decision to recommend pain medication, muscle relaxants and exercises was based upon "a number of considerations." (Paper 71-2 at 2).  First, some of Bain's symptoms, such as problems urinating and sleeplessness, appeared to have subsided. Second, his activity level was inconsistent with his complaints and was not in compliance with his treatment plan.  "Given the high risk of recurrence after surgery, it was important that a suitable surgical candidate demonstrate the willingness to be compliant with physician's orders and restrictions on activity."  Id.

---

[3]  Attached to Dr. Pederson's affidavit is a Facility Report Form from the prison indicating that Breer "ran, jumped, dribbled and stopped quick without showing any signs of pain or discomfort whatsoever." (Paper 71-2 at 8).  Because this report is not being introduced for its truth, but rather as a basis for Dr. Pederson's reasoning at the time, the Court will consider it. Fed. R. Evid. 801(c).

14

Although Breer insists that surgery should have been performed earlier, the record does not show the sort of deliberate indifference to his needs that would rise to the level of a constitutional violation.  Mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred, does not suffice for an Eighth Amendment claim.  <u>Estelle</u>, 429 U.S. at 105-06; <u>Chance</u>, 143 F.3d 698, 703 (2d Cir. 1998).  From Dr. Pederson's perspective, Breer was showing some improvement with conservative treatment, and consultations with other physicians and specialists were provided.  Although surgery was eventually performed,[4] there is no indication that a refusal to provide surgery, notwithstanding Breer's ongoing pain and frustration, violated the constitutional bar on cruel and unusual punishment.

Furthermore, Breer has failed to present any evidence in support of his allegation that Dr. Pederson was motivated by a desire to control costs and/or comply with the DOC's plan to move him out of state.  Indeed, Dr. Pederson has submitted a sworn affidavit in which she attests that her

---

[4] Because there is no evidence in the record pertaining to the outcome of the 2005 surgery, the Court will not assume that the surgery was either successful or unsuccessful.

15

treatment was guided by her "education, training, and experience." (Paper 71-2).[5]  With nothing in the record to support Breer's bald allegations of improper motives, his claims do not create genuine issues of material fact.  See Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact.").

The record at summary judgment shows that prison medical staff, and primarily Dr. Pederson, provided Breer with medical care on a regular basis.  The fact that Breer was not sent to a specialist as soon as he would have liked "does not establish that the defendants acted with deliberate indifference to his condition." Boomer v. Goord, 2008 WL 2675829, at *1 (2d Cir. July 9, 2008) (citing Chance, 143 F.3d at 703).  Breer often disagreed with the treatment he was being provided, but as discussed above, such disagreement does not necessarily reflect any wrongdoing on the part of the physician.  See Estelle, 429

---

[5]  Looking elsewhere in the record, the only potential comment on the adequacy of Dr. Pederson's care comes from Dr. Rinehart, who appears to have been comfortable deferring to her judgment with regard to treatment.  If Dr. Pederson's care and choice of treatment was somehow inappropriate, the Court presumes that Dr. Rinehart would have maintained his recommendation for surgery and not allowed Breer's care to be undermined.

U.S. at 105-06.  Because the facts of this case, when viewed
in a light most favorable to the non-moving party, do not
demonstrate that Dr. Pederson or any other defendant
disregarded an excessive risk to Breer's health or safety,
Farmer, 511 U.S. at 837, the motion for summary judgment
with respect to Breer's medical care claims under the Eighth
Amendment is GRANTED.

II.  Remaining Counts

The defendants' motion for summary judgment does not
address Breer's claims with regard to his mental health
treatment.  These claims are asserted against Commissioner
Gold and Superintendent Lanman in Count III, and all
defendants in Count IV.  There is also no discussion of the
"strip cell" incident alleged in Count V.  Consequently, the
Court will not grant summary judgment on these issues.

The Court also declines to rule upon Breer's state law
claims at this time.  A district court has "considerable
discretion over what state law claims it will include within
its supplemental jurisdiction in a particular case."
Cushing v. Moore, 970 F.2d 1103, 1110 (2d Cir. 1992).  Here,
it is not clear whether any of Breer's federal claims will
proceed to trial.  If all of his federal claims are

17

dismissed prior to trial, the Court may decline jurisdiction over his state law claims.  28 U.S.C. § 1367(c)(3).  Those claims would be dismissed without prejudice, and could presumably be pursued in state court provided that Breer satisfied the pertinent filing requirements.  See, e.g., 28 U.S.C. § 1367(d) ("[t]he period of limitations for any claim [for which supplemental jurisdiction is invoked] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

Accordingly, the defendants' motion for summary judgment on Breer's medical malpractice claim is DENIED without prejudice.  If the parties wish to file dispositive motions on all remaining issues, including the state law claims, they may do so on or before September 30, 2008.  If no such filings are received, this case will be placed on the Court's trial calendar.

III.  Breer's Pending Motion

The most recent filing in the case is Breer's motion for (1) reconsideration of the Court's order denying his motion to compel documents, and (2) an extension of time in which to obtain two documents that he alleges are missing

from the record.  Breer claims that he is unable to proceed without these documents.

The first document allegedly shows that Breer was fully recovered after his 2002 surgery.  The second is the written statement from the supervising physician at CMS recommending that Breer be considered a candidate for surgery.  Both of these issues were considered above with respect to the defendants' motion for summary judgment, and viewing the facts in a light most favorable to the non-moving party, the Court accepted both the full recovery and the surgical recommendation as established facts for purposes of that motion.  Consequently, there is no need to allow Breer additional time to obtain these documents, and his motion for reconsideration and extension of time (Paper 98) is DENIED.

## Conclusion

For the reasons set forth above, defendants' motion for summary judgment (Paper 71) is GRANTED in part and DENIED in part.  Specifically, summary judgment is GRANTED on Counts I, II and VI of the Amended Complaint.  The Court reserves judgment on Counts VII and VIII at this time.  Because the motion for summary judgment does not touch the allegations

set forth in Counts III, IV, and V, judgment will not be granted on those claims.  Accordingly, as to Counts III, IV, V, VII and VIII, the motion for summary judgment is DENIED. Breer's motion to reconsider and for extension of time (Paper 98) is also DENIED.

If the parties wish to file dispositive motions on all remaining issues, including Breer's state law claims, they may do so on or before September 30, 2008.  If no such filings are received, this case will be placed on the Court's trial calendar.

Dated at Burlington, in the District of Vermont, this 27th day of August, 2008.


/s/ William K. Sessions III
William K. Sessions III
Chief Judge, U.S. District Court