```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT
```

Harley L. Breer, Jr.,           :
        Plaintiff,              :
                                :
        v.                      :       File No. 2:03-CV-326
                                :
Steve Gold, Correctional        :
Medical Services, Pamela        :
Pederson, Kathy Lanman,         :
        Defendants.             :

<u>OPINION AND ORDER</u>
(Papers 103, 106 and 109)

Plaintiff Harley Breer, a Vermont inmate proceeding *pro se*, brings this action claiming that the defendants failed to provide him with adequate medical and mental health care, and placed him administrative segregation in violation of his rights. On a prior motion for summary judgment, the Court dismissed Breer's Eighth Amendment claims relating to his medical care. Now pending before the Court is the defendants' motion for summary judgment on all remaining claims. The motion is unopposed. For the reasons set forth below, the motion for summary judgment is GRANTED and this case is DISMISSED.

<u>Factual and Procedural Background</u>

Breer is an inmate in the custody of the Vermont Department of Corrections. He has been a Vermont inmate since 1999. His amended complaint alleges that in 2003 he

began experiencing "pain, numbness and loss of function radiating from his lower back, through his left leg, and extending to his toes." (Paper 26 at 3). Breer also alleges that he has a "history of serious mental illness including chronic post traumatic stress disorder, major depressive disorder and borderline personality disorder." Id.

The amended complaint consists of seven counts. Counts I, II and VI focus on the medical treatment provided by defendant Dr. Pamela Pederson. Breer claims that Dr. Pederson downplayed his condition and manipulated his treatment, thereby depriving him of adequate care. The defendants previously moved for summary judgment on these claims. The Court granted the motion, finding that Dr. Pederson's treatment did not demonstrate conduct commensurate with an Eighth Amendment violation.

The defendants have now filed a second motion for summary judgment on all remaining claims. Counts III and IV focus on Breer's mental health care. Specifically, they allege that the supervisor defendants had a policy of failing to provide adequate mental health treatment, and that all defendants are liable under the Eighth Amendment.

Breer claims that because of the pain and other symptoms related to his physical ailments, his mental health began to deteriorate in 2003. Id. at 4. The defendants have submitted affidavits showing that between January 1, 2003 and December 31, 2004, Breer requested mental health treatment fifty three times, and was provided treatment on each occasion. (Paper 109-8 at 3). In all but three instances, he was seen within 24 hours of his request. Id. at 4.

Despite the care that was allegedly being provided, in October 2003 Breer tried to cut his throat with a broken razor blade. Id. at 2. He then swallowed the razor blade in front of a Correctional Officer. The defendants contend that, "for his own protection," Breer was placed in administrative segregation with only a smock. Id. at 3. According to current prison superintendent Michael Bellizzi, "[t]he conditions of administrative segregation were intended to maximize the likelihood that the razor blade would be immediately detected and removed from Plaintiff's possession." Id.; (Paper 109-4 at 1, 2).
The razor blade passed on November 2, 2003, and Breer was subsequently released from segregation.

Count V of the amended complaint alleges that placing Breer in "strip cell" confinement violated his right to be free from cruel and unusual punishment. (Paper 26 at 8). He alleges that he was denied contact with the outside world, that his lights were kept on 24 hours a day, and that his physical and mental health continued to deteriorate. Id. at 5. Breer also claims that his confinement was intended as punishment for his efforts to seek "adequate medical care and treatment." Id. at 8.

Counts VII and VIII of the amended complaint are state law claims. Count VII asserts that the defendants failed to uphold their statutory duty, pursuant to 28 V.S.A. § 801, to provide health care "in accordance with the prevailing medical standards." Id. at 9. Count VIII accuses Dr. Pederson of medical malpractice. Discovery is closed and, as noted above, the defendants' motion for summary judgment is unopposed.

## Discussion

I. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment may not be granted unless the Court determines that there is no genuine issue

of material fact to be tried, and that the undisputed material facts warrant judgment for the moving party as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir. 2006); Williams v. Utica Coll. of Syracuse Univ., 453 F.3d 112, 116 (2d Cir. 2006).  The burden of demonstrating the absence of any genuine dispute as to material facts rests upon the party seeking summary judgment.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, courts are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).

Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party to make a sufficient showing to establish the essential elements of that party's case on which it bears the burden of proof at trial.  Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003).  A party opposing a motion for

summary judgment cannot rely on mere speculation or conjecture.  See, e.g., Conroy v. N.Y. State Dep't of Corr. Servs., 333 F.3d 88, 94 (2d Cir. 2003) ("[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.").  However, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."  Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004).  Finally, because Breer is proceeding *pro se*, the Court must construe his pleadings liberally.  See, e.g., Williams v. Edwards, 195 F.3d 95, 96 (2d Cir. 1999).

## II. Eleventh Amendment Immunity

The defendants first move for summary judgment on the official capacity claims brought against former DOC Commissioner Steven Gold and former prison Superintendent Kathy Lanman.  The Eleventh Amendment prohibits suits in federal court by citizens against a state and its agencies, absent a waiver of immunity and consent to suit by the state or a valid abrogation of constitutional immunity by Congress.  See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47 (1993); Pennhurst

State Sch. and Hosp. v. Halderman, 465 U.S. 89, 97-100 (1984). The Eleventh Amendment also bars claims against state employees sued in their official capacities. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Pennhurst, 465 U.S. at 102.

Relevant to this case, there has been no waiver of Vermont's sovereign immunity and no abrogation of that immunity by Congress. In fact, the Vermont legislature has specifically preserved the State's immunity under the Eleventh Amendment. See 12 V.S.A. § 5601(g). Accordingly, all damages claims against defendants Gold and Lanman in their official capacities are DISMISSED.

III. Personal Involvement

Defendants Gold and Lanman also contend that the claims brought against them in their individual capacities should be dismissed because they were not personally involved in any alleged wrongdoing. The complaint does not allege that either defendant was directly involved in any wrongdoing. Instead, Count III alleges in conclusory fashion that "defendants Commissioner and Lanman had a policy of failing to provide inmates with necessary and adequate medical treatment." (Paper 26 at 7). The complaint also suggests

7

they may be held responsible for actions by "their agents and employees with knowledge of plaintiff's mental health needs and/or with deliberate indifference to those needs." Id.

The Second Circuit has made clear that, for a supervisory defendant to be held liable under § 1983, the claim cannot rest on *respondeat superior*.

> '[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*.' Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (citing Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989)). To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations. See Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995). By the same token, however, mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim. Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).
> 
> Supervisor liability under § 1983 "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates

> who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." <u>Hernandez</u>, 341 F.3d at 145; <u>see</u> also <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995).

<u>Richardson v. Goord</u>, 347 F.3d 431, 435 (2d Cir. 2003).

Here, there is no allegation of direct involvement. Nor is there an allegation that defendants Gold and Lanman, once notified of unconstitutional conduct, failed to remedy the problem. The claim that a policy was created to allow inadequate care is not supported by any specific facts, and is belied by the defendants' submissions as set forth below.

With the summary judgment motion being unopposed, the Court has only the benefit of the complaint and the undisputed facts presented by the defendants. The complaint, as noted above, provides conclusory allegations. In contrast, the undisputed facts provide a detailed record about Breer's care. Among the evidence presented is an affidavit from the DOC's Chief of Mental Health Services, Ronald Smith, Psy.D., which shows that Breer received regular mental health care while in prison. According to Dr. Smith, Breer requested mental health treatment on 53 occasions between January 1, 2003 and December 31, 2004, and was attended to by a mental health professional 68 times

during that period. (Paper 109-5 at 2). He was also provided "multiple screenings, several assessments, and on numerous occasions he was provided a safety plan secondary to various levels of expressed suicidality." Id. While Breer may not have believed that this level of care was adequate, the record at summary judgment falls well short of showing that defendants Gold and Lanman crafted a policy of inadequate mental health care. Nor has Breer established that Gold and Lanman were grossly negligence as supervisors, or that they failed to act on information provided to them. These defendants are, therefore, entitled to dismissal of the § 1983 claim brought against them in their individual capacities.

IV. Eighth Amendment Mental Health Care Claim

The defendants are also entitled to summary judgment on Breer's Eighth Amendment claim of inadequate mental health care, set forth at Count IV of the complaint. Count IV alleges that the defendants were deliberately indifferent to his mental health needs, and that the care he received was substandard. Again, the undisputed facts belie this claim.

The Eighth Amendment, which is made applicable to the states through the Fourteenth Amendment, prohibits

10

"unnecessary and wanton infliction of pain" and suffering. Estelle v. Gamble, 429 U.S. 97, 101-03 (1976) (citations and internal quotations omitted). To succeed on a claim alleging that prison conditions, including medical care, violated the Eighth Amendment, a plaintiff must satisfy both an objective and a subjective requirement: the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citations and internal quotations omitted).

Accordingly, in order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, "sufficiently serious." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom., Foote v. Hathaway, 513 U.S. 1154 (1995). A medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted). The defendants do not contest the seriousness of Breer's mental health condition.

Turning to the subjective element, it is well-established that deliberate indifference exists if an official knows of and disregards an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837. The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. With respect to medical care, prison medical staff is vested with broad discretion to determine what method of diagnosis and/or treatment to provide its patients. Estelle, 429 U.S. at 107; Chance, 143 F.3d at 703; Rosales v. Coughlin, 10 F. Supp. 2d 261, 264 (W.D.N.Y. 1998). "[S]ection 1983 was not designed to permit the federal courts to sit as final arbiters of the sufficiency of medical practices of state prisons." White v. Haider-Shah, 2008 WL 2788896, at *7 (N.D.N.Y. July 17, 2008) (citing Church v. Hegstrom, 416 F.2d 449, 450-51 (2d Cir. 1969)). Some courts have allowed medical providers a "presumption of correctness" with respect to the care and safety of patients. Perez v. The County of Westchester, 83 F. Supp. 2d 435, 440 (S.D.N.Y. 2000) (citing Kulak v. City of New York, 88 F.3d 63, 77 (2d Cir. 1996)).

Here, no reasonable trier of fact could make a finding of deliberate indifference. As discussed above, Breer received considerable mental health attention during the period in question. In one of his state court filings, he conceded that he was able to access such care once a week, but asked instead for "unlimited access to mental health [care]." (Paper 109-3 at 12). The fact that Breer desired more frequent care does not, by itself, mean that his care was either inadequate or unconstitutional. Indeed, it is well established that a mere disagreement about treatment does not establish an Eighth Amendment claim. <u>Estelle</u>, 429 U.S. at 105-06.

The evidence presented at summary judgment shows that Breer submitted 53 requests for mental health care, and that in all but three instances he was seen within 24 hours. (Paper 109-5 at 1). In his complaint, Breer alleges that his care endangered his health and well being, but he has not offered any facts to support this claim. Based upon his review of Breer's records, Dr. Smith opined that each of Breer's "interventions were geared toward his needs and appropriate given his issues." <u>Id.</u> at 2. In light of these facts, the Court finds that the defendants are entitled to

judgment as a matter of law on Breer's Eighth Amendment mental health claim, set forth in Count IV of the complaint.

V. Strip Cell Claim

Breer's complaint includes one count, Count V, devoted solely to his confinement after his apparent suicide attempt. The defendants argue that he never exhausted his administrative remedies on this claim, and that even assuming exhaustion, the claim is without merit. The Court will not reach the exhaustion issue, as the record before it provides no evidence of unconstitutional conduct.

Breer tried to cut his own throat, then showed the razor to a Correctional Officer and swallowed it. DOC personnel followed standard procedure by having him stripped, examined by medical staff, and his cell searched. (Paper 109-4 at 1). He was subsequently transported to a hospital, where an x-ray confirmed the presence of a razor in his stomach. Upon his return, Breer was placed in a strip cell with a smock. Superintendent Bellizzi explains the reason for the strip cell assignment as follows:

> This measure was taken for Mr. Breer's own protection, as well as the protection of other inmates. The conditions of administrative segregation were intended to maximize the likelihood that the razor blade would be immediately detected and removed from Plaintiff's

> possession. Had Plaintiff passed the razor blade out of his system and regained possession of it, he could have used it to further injure[] himself, another inmate, or prison staff.

Id.

In order to prevail in a prison conditions claims, an inmate must show (1) that the conditions of his confinement resulted in deprivation that was sufficiently serious; and (2) that the defendant acted with deliberate indifference to the plaintiff's health or safety. Farmer, 511 U.S. at 834; Davidson v. Murray, 371 F. Supp. 2d 361, 370 (W.D.N.Y. 2005). Breer's complaint cites the conditions of his strip cell status, including the lack of a mattress, blanket, personal care items and writing materials. The lights were allegedly kept on 24 hours a day, and he was not allowed legal or personal mail. Even assuming the truth of these allegations, however, the conditions of his confinement did not rise to the level of an Eighth Amendment violation. See, e.g., Abascal v. Hilton, 2008 WL 268366, at *12 (N.D.N.Y. Jan. 30, 2008) (five days in strip cell did not violated Eighth Amendment where plaintiff did not allege deprivation of "the minimal civilized measure of life's necessities") (quoting Farmer, 511 U.S. at 834).

Furthermore, Breer's placement in strip cell status

15

does not evidence deliberate indifference to his medical needs. To the contrary, as explained by Superintendent Bellizzi, Breer was placed in isolation in order to prevent him from further harming himself or others. While the complaint claims that Breer was placed in strip cell status as punishment for trying to obtain adequate medical care, and that his requests for treatment were denied, there is no record evidence to support these claims. Accordingly, the defendants' motion for summary judgment on Count V of the complaint is GRANTED.

VI. <u>State Law Claims</u>

In addition to his federal constitutional claims, Breer's complaint brings two state law claims, the first under 28 V.S.A. § 801 for inadequate medical care (Count VII), and the second for medical malpractice (Count VIII). Some of the language in Count IV also reflects a potential negligence or malpractice claim.

Title 28 section 801 requires the DOC to provide health care for inmates "in accordance with the prevailing medical standards." 28 V.S.A. § 801(a). The defendants argue that this claim is barred by Vermont's sovereign immunity. The statute itself does not waive the State's sovereign

immunity, and there is no statutory language or case law suggesting that Congress has abrogated that immunity. The § 801 claim is, therefore, barred from review by this Court.

The defendants further argue that Breer's negligence claims have been brought in the wrong forum and against the wrong defendant. The Vermont Tort Claims Act constitutes a limited waiver of Vermont's sovereign immunity. It allows lawsuits resulting from state employee negligence to be brought (1) solely against the State of Vermont and (2) exclusively in Vermont superior courts. 28 V.S.A. §§ 5602(a)-(b), 5601(a). Again, the statute does not waive Vermont's sovereign immunity such that plaintiffs may sue state employees for negligence in federal court. Accordingly, this Court has no jurisdiction to hear the Breer's negligence claims against state officials.

Even if the Court were to entertain negligence claims, such as the claim brought against Dr. Pederson for inadequate medical (Count VIII),[1] the claim lacks the necessary expert support. Under Vermont law, the elements of a malpractice claim must ordinarily be proved by expert testimony. <u>Jones v. Block</u>, 171 Vt. 569, 569 (2000); 12

---

[1] The Court expresses no opinion as to whether Dr. Pederson is protected as a state employee under the Vermont Tort Claims Act.

V.S.A. § 1908. "Except where the alleged violation of the standard of care is so apparent that it can be understood by a layperson without the aid of medical experts, the burden of proof imposed by § 1908 requires expert testimony." Provost v. Fletcher Allen Health Care, Inc., 179 Vt. 545, 890 A.2d 97, 2005 VT 115, ¶ 12.

Here, Breer cannot show medical malpractice without expert testimony. For substantially the reasons set forth in this Court's previous decision dismissing the constitutional claim against Dr. Pederson, it is not obvious to the lay person that the medical care Breer received was substandard. Similarly, Bain's mental health records show consistent care over a two-year period, and focused attention when his personal safety was at stake. Based upon the evidence currently before the Court, and the lack of an expert on behalf of the plaintiff, there are no genuine issues of material fact on the malpractice issue. See Mello v. Cohen, 168 Vt. 639, 640-41 (1998) (summary judgment proper in medical malpractice case where plaintiff failed to present expert evidence). Accordingly, the defendants' motion for summary on Breer's state law claims, set forth in Counts VII and VIII of the complaint, is GRANTED.

## Conclusion

For the reasons set forth above, the defendants' motion for summary judgment (Paper 109) is GRANTED. Breer's pending motions to stay a prison transfer (Paper 103) and to exclude Attorney Kaveh Shahi from these proceedings (Paper 106) are DENIED. This case is DISMISSED.

Dated at Burlington, in the District of Vermont, this 3rd day of February, 2009.

                                        /s/ William K. Sessions III
                                        William K. Sessions III
                                        Chief Judge, U.S. District Court